O
JS-6

# United States District Court
# Central District of California

GREGORY IRVING,

      Plaintiff,

  v.

THE OKONITE COMPANY, INC.; KEITH SUMMERS, SR.; KEITH SUMMERS, JR.; and DOES 1 through 100, inclusive,

      Defendants.

Case No. 2:15-cv-04821-ODW-SS

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [12]**

## I.   INTRODUCTION

Pending before the Court is a Motion to Remand filed by Plaintiff Gregory Irving. (ECF No. 12.) Plaintiff argues that his state-law employment discrimination and harassment suit was improperly removed from Santa Barbara Superior Court by Defendants The Okonite Company, Inc. ("Okonite"), Keith Summers, Sr., and Keith Summers, Jr. (collectively "Defendants"). For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion.[1]

///

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II.   BACKGROUND

Plaintiff was employed by Okonite from February 2006 until October 20, 2014. (Compl. ¶ 3.)  Summers, Sr. was Plaintiff's supervisor, and Summers, Jr. was a non-managerial, hourly worker. (*Id.* ¶¶ 4–5.)

### A.   Racial Discrimination Allegations

During his employment at Okonite, Plaintiff was allegedly subjected to repeated racial discrimination and harassment. (*Id.* ¶ 15.)  Plaintiff, who is African-American, alleges that both Summers, Sr. and Summers, Jr. went out of their way to direct racial slurs at Plaintiff on a daily basis. (*Id.* ¶ 17.)  Plaintiff was fired on October 20, 2014, and race was allegedly a substantial motivating factor in Okonite's decision to fire him. (*Id.* ¶¶ 37, 78.)  Plaintiff allegedly complained about the racial discrimination on two separate occasions—November 6, 2014, and November 18, 2014—but his complaints were ignored. (*Id.* ¶¶ 22–23.)

### B.   Disability Discrimination Allegations

Plaintiff was allegedly disabled during his entire employment at Okonite, and Okonite was aware of Plaintiff's disabling chronic allergy condition. (*Id.* ¶¶ 47–48.)  On October 13, 2014, Plaintiff allegedly notified his supervisor that he was unable to work because he was prescribed medication that required rest for several days. (*Id.* ¶ 50.)  Plaintiff was instructed by his supervisors to submit a doctor's note. (*Id.*)  Plaintiff allegedly submitted the requested doctor's note as soon as he was able to obtain one on October 17, 2014. (*Id.* ¶ 50.)  Plaintiff alleges that no one from Okonite contacted him during the few days he was away from work and he was treated in an emergency room at some point while he was out. (*Id.* ¶ 90.)  Plaintiff allegedly assumed that his supervisors were aware of his medical absence, and if "Defendants had any doubts about Plaintiff's condition or ability to work, they had a duty to communicate with him by picking up the phone and asking for clarification of his condition and need for further time off to accommodate the condition." (*Id.* ¶¶ 50, 77.)  When Plaintiff returned to work, he was terminated for "job abandonment"

because he did not call into work on the days he was absent. (*Id.*) Plaintiff complained to supervisors that he missed work due to his disability, but Okonite refused to reinstate Plaintiff to his former position. (*Id.* ¶ 52.) Plaintiff alleges that his disability and request for reasonable accommodation was a substantial motivating reason in Okonite's decision to fire him. (*Id.* ¶ 50.) Plaintiff also alleges that he was punished for requesting disability leave and Okonite failed to provide him notice of his statutory rights to take disability leave. (*Id.* ¶¶ 93–94, 114.) Plaintiff further alleges that Okonite refused to consider Plaintiff for reinstatement due to Plaintiff's disability. (*Id.* ¶ 104.)

## C. Failure to Pay Allegations

After Plaintiff was fired on October 20, 2014, he attempted to cash his final paychecks. (*Id.* ¶ 124.) On October 27, 2014, four of Plaintiff's final paychecks bounced resulting in bank fees which Okonite has still not paid. (*Id.* ¶¶ 124–25.) Plaintiff alleges that Okonite's failure to issue his final paychecks was willful retaliation against Plaintiff for taking disability leave. (*Id.* ¶ 132.)

## D. Procedural History

Plaintiff exhausted his administrative remedies by filing a complaint with the California Department of Fair Employment and Housing within one year of the last adverse employment action. (*Id.* ¶ 11.)

Plaintiff originally filed his Complaint in state court on May 21, 2015. (ECF No. 1, Ex. A.) The Complaint raises ten state-law causes of action: (1) harassment on the basis of race in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; (2) discrimination on the basis of race in violation of FEHA; (3) discrimination on the basis of disability in violation of FEHA; (4) failure to accommodate a disability in violation of FEHA; (5) failure to engage in a good faith interactive process in violation of FEHA; (6) violation of the California Family Rights Act, Cal. Gov't Code § 12945.2; (7) failure to hire in violation of FEHA; (8) retaliation; (9) a violation of California Labor Code § 203.1; and (10)

1 failure to timely pay all earned wages due at time of separation, Cal. Labor Code §§ 201, 203.

Defendants removed this action to federal court on June 25, 2015. (ECF No. 1.) In their Notice of Removal, Defendants allege that this Court has federal question jurisdiction, *see* 28 U.S.C. § 1331, because the relief sought in the Complaint is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (*Id.* at 3.) On July 9, 2015, Plaintiff filed the pending Motion to Remand. (ECF No. 12.) Defendants filed a timely Opposition on July 20, 2015 (ECF Nos. 17, 18), and Plaintiff filed a timely Reply on July 27, 2015 (ECF No. 19).

### III.   LEGAL STANDARD

A suit filed in state court may be removed to federal court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a). "Federal district courts have original federal question jurisdiction of actions 'arising under the Constitution, laws, or treaties of the United States.'" *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (quoting 28 U.S.C. § 1331). Whether removal jurisdiction exists must be determined by reference to the "well-pleaded complaint." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986). The well-pleaded complaint rule makes plaintiff the "master of the claim." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, where plaintiff can state claims under both federal and state law, he can prevent removal by ignoring the federal claim and alleging only state claims. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996).

However, there are exceptions to the well-pleaded complaint rule that allows courts to look beyond the face of the plaintiff's pleading. Among the exceptions is the "artful pleading" doctrine, which provides that a plaintiff cannot defeat removal of a federal claim by artfully disguising or pleading a federal claim as a state law cause of action. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 n.2 (1981). If the claim arises under federal law, the federal court will recharacterize the claim and uphold removal. *Schroeder v. TransWorld Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir.

1983). The artful pleading doctrine applies to claims that are completely preempted by federal law. *Caterpillar*, 482 U.S. at 393.

## IV. DISCUSSION

The parties do not dispute that Plaintiff was a member of a labor union while employed by Okonite and that the terms of Plaintiff's employment were controlled by a collective bargaining agreement ("CBA"). (Mot. 1; Opp'n 1–3.) In their Notice of Removal, Defendants asserted that removal was proper because Plaintiff's claims rely on the CBA thus compelling mandatory federal preemption under the LMRA. (ECF No. 1.) In the pending Motion to Dismiss, Plaintiff argues the opposite—removal was improper because his state-law causes of action are not preempted by federal law. (Mot. 1.) Plaintiff contends that while his employment at Okonite was controlled by a CBA, all of the causes of action involve state law rights independent of the CBA. (*Id.*) The Court will first discuss the controlling law for LMRA preemption and then explain why Plaintiff's claims are not preempted.

### A. LMRA Preemption

Section 301 of the LMRA gives federal courts exclusive jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). *See Franchise Tax Bd. of State of Cal. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983) ("The preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'"). Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 n.3 (1988).

The Ninth Circuit uses a two-part test in determining whether a claim or suit is preempted under Section 301. First, a court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not

by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985)). Second, if "the right exists independently of the CBA, [the court] must still consider whether it is nevertheless 'substantially dependent on analysis of a [CBA].'" *Id.* (quoting *Caterpillar*, 482 U.S. at 394.) "If such dependence exists, then the claim is preempted by [S]ection 301; if not, then the claim can proceed under state law." *Id.* at 1059–60.

### B. Step One: State Law Rights

To resolve the inquiry at step one, courts must consider "the *legal* character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." *Id.* at 1060 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)) (emphasis original).

Here, all of Plaintiff's causes of action are creations of California statutes. (*See* ECF No. 1, Ex. A.) Defendants do not argue that the CBA creates the rights upon which Plaintiff is bringing his suit. As a result, the rights in this case are "independent" of the CBA and the Court therefore turns to step two of the *Burnside* analysis.

### C. Step Two: Substantial Dependence on a CBA

To determine whether a state law claim is "substantially dependent on analysis" of the terms of a CBA, the Court must "decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Burnside*, 491 F.3d at 1060 (quoting *Livadas*, 512 U.S. at 125). "A state law claim is not preempted under [Section] 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 693 (9th Cir. 2001). Neither "looking to" the CBE "merely to discern that none of its terms is reasonably in dispute," nor

"alleging a hypothetical connection between the claim and the terms of the CBA" is enough to warrant preemption. *Id.* (internal citations omitted). Additionally, "[i]f the claim is plainly based on state law, [Section] 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer*, 255 F.3d at 681. *See also Burnside*, 491 F.3d at 1060 ("[R]eliance on the CBA as an aspect of a defense is not enough to 'inject[] a federal question into an action that asserts what is plainly a state-law claim.'").

Here, Defendants claim that the Court must reference and interpret the CBA three different times. First, Defendants argue that even if Plaintiff makes a prima facie case of discrimination, the Court must "interpret[] and appl[y]" the CBA to determine whether Okonite "had a 'legitimate nondiscriminatory reason' for Plaintiff's termination." (Opp'n 10.) Second, Defendants argue that there was "just cause" to terminate Plaintiff and thus Plaintiff's "claims of wrongful termination will require an adjudication of the CBA's 'just cause' standard." (*Id.* at 12.) Third, Defendants argue that the Court must look to and interpret the CBA to determine whether Plaintiff complied with the mandatory grievance process which is a prerequisite to bringing suit. (*Id.* at 14.)

Each of Defendants' three arguments is identical in substance: an alleged interpretation of the CBA will arise when the Court considers Defendants' justification for firing Plaintiff. However, the Court finds that the CBA between Okonite and Plaintiff's labor union would be construed, if at all, *only* in the context of evaluating Defendants' justification defenses. As the Ninth Circuit noted in *Humble*, "reliance on CBA provisions to defend against an independent state law claim does not trigger [Section] 301 preemption." *Humble v. Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002). *See also Cramer*, 255 F.3d at 681. In *Humble*, the defendant employer "argue[d] that when it offers a non-discriminatory justification for its conduct by relying on authorizing CBA provisions, that suffices to trigger preemption of [the plaintiff's] reasonable accommodation claim." *Id.* The Ninth Circuit rejected

this argument, explaining that "[t]his argument is unavailing after *Cramer*, which held that reliance on CBA provisions to defend against an independent state law claim does not trigger [Section] 301 preemption." *Id.*

Defendants' argument is identical to the argument rejected by the Ninth Circuit in *Humble*. The mere fact that a CBA may absolve Defendants of liability when presented as a defense does not mean that Plaintiff's state law cause of action is preempted. Preemption under Section 301 does not apply.

Defendants' claim that *Harris v. Alumax Mill Prods., Inc.*, 897 F.2d 400 (9th Cir. 1990), "is directly on point" is incorrect. The court in *Harris* found preemption under Section 301 was appropriate based on the plaintiff's cause of action "for breach of the covenant of good faith and fair dealing" against the defendant. *Id.* at 402. The court explained that this particular cause of action "is clearly dependent on the terms of the [CBA]" because the alleged breach was based on the defendant's failure to comply with procedures explicitly provided for in the CBA. *Id.* at 403. The Court held that the plaintiff's claims were preempted because the legal character of the claim, not the defense, was created by the CBA. *Id.* This holding is based on step one of the *Burnside* analysis, and as a result is not relevant to Defendants regardless of the factual similarities. Defendants cannot rely on *Harris* because the step one analysis unquestionably demonstrates that the legal rights asserted by Plaintiff were not created by the CBA.

The Court concludes that Defendants failed to demonstrate that preemption is appropriate at step two of the *Burnside* analysis. Referring to the CBA to assess the merits of Defendants' defenses is insufficient to trigger Section 301 preemption.

The Court is further persuaded that preemption is improper for two additional reasons. First, the Ninth Circuit's observations in *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir. 1993), indicate that the types of claims at issue here cannot be preempted. The court in *Ramirez* noted: "In every case in which we have considered an action brought under [FEHA, Cal. Gov't Code § 12940], we have held

1 that it is not preempted by [S]ection 301." *Id.* Six of Plaintiff's causes of action arise under FEHA, and Defendants fail to identify any precedent in which FEHA claims were preempted.

Second, Defendants make no principled argument that interpretation of the CBA is necessary. Preemption is only appropriate if the Court must "*interpret* an existing provision of a CBA." *Cramer*, 255 F.3d at 693 (emphasis added). Just because the Court may reference and apply the CBA does not mean that the Court is called to interpret a provision of the CBA. Defendants identify no disputed provision in the CBA that would require the Court's interpretation, as opposed to the Court's application. For example, Defendants claim that the Court must interpret the CBA provision that authorizes Okonite to fire employees who are absent work for three days without calling into work to notify a supervisor. (Opp'n 4.) Defendants argue that Okonite's alleged legitimate reason for firing Plaintiff "will require the interpretation and application of the CBA's specific article on 'no-call, no shows.'" (*Id.*) While the Court may apply this provision of the CBA, no interpretation is necessary. The "no-call, no-show" provision is straight forward and Defendants offer no explanation on how the parties disagree over the proper interpretation; speculative disagreements regarding interpretation is not enough. Defendants fail to demonstrate that their defenses to suit will require *interpretation* of the CBA, rather than reference to its undisputed terms. *See Livadas*, 512 U.S. at 124 ("[W]hen the meaning of the contract terms is subject to dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").

### D.     Plaintiff's Request for Attorneys' Fees

Plaintiff argues that he is entitled to $17,625 in attorneys' fees because "there was and is no plausible basis for [D]efendants' removal." (Mot. 12.) The Court rejects this argument on grounds that Defendants advocated for a logical extension of

/ / /

the law even though their position was unsupported.  Defendants' decision to remove the matter was plausible.

## V.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion to Remand.  (ECF No. 12.)  The Court hereby **REMANDS** this action to the Santa Barbara County Superior Court, case no. 15cv01148.  The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

August 12, 2015

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**